UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Wanda J. Williams,

                                            Plaintiff,

          v.

Commissioner of Social Security,

                                            Defendant.

_____

**Decision and Order**

19-CV-6266 HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in

brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 9,

10.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the

Social Security Act.  The Court has deemed the motions submitted on papers under Rule 78(b).

## II.    DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding.  Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations.  And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is 'more than a mere scintilla.'  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation and editorial marks and citations omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 773–74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).  When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000).  In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion.  *Id.*  "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

2

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant

3

work; and whether the impairment prevents the plaintiff from doing any kind of
work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467.  If a plaintiff is found to be either

disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends.  20 C.F.R.

§§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However,

the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir.

1972).

To determine whether an admitted impairment prevents a plaintiff from performing past

work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).

The ALJ must then determine the individual's ability to return to past relevant work given the RFC.

*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's final determination because of how the ALJ assigned

weight to a social worker who treated her depression and anxiety for several years.  The ALJ found

that plaintiff had the severe impairments of depression, anxiety, and substance abuse.  [18.]  After

deciding that plaintiff did not meet any medical listing, the ALJ determined that plaintiff had the

RFC for medium work with non-exertional limitations to simple, routine tasks and occasional

interactions with coworkers and the general public.  [19.]  In crafting the RFC, the ALJ gave great

weight to the agency's consultative psychiatric examiner; partial weight to a state examiner; and

limited weight to Gail Long, a social worker who had seen plaintiff since 2016.  The ALJ found that

a psychological assessment that Ms. Long prepared for the Monroe County Department of Social

Services contradicted the clinical record and had too little information, beyond checkboxes, to

explain the discrepancy.  [21.]  Plaintiff acknowledges that Ms. Long does not qualify as an

acceptable medical source under pre-2017[1] regulations, but she argues that the Commissioner

should not have dismissed Ms. Long's assessment out of hand:

> On January 9, 2018, Ms. Long noted that the Plaintiff had chronic depression with poor treatment adherence, and would be unable to remember simple procedures, remember short and simple tasks, maintain attention, sustain an ordinary workday, work with others without distraction, make simple decisions, complete a normal workday and week without interruption, perform at a consistent pace, and deal with stress for a least twenty percent of the time; would be unable to interact appropriately with the public, accept instruction, get along with coworkers or peers for up to twenty percent of the [time]. Plaintiff was "pleasant but nervous", would react poorly to change or uncertainty; had difficulty retaining or comprehending information; and "may not know what to do but also does not know what to ask". T. 527-32. The opinion was faxed on April 3, 2018. T. 526. The Appeals Council acknowledged that the ALJ failed to evaluate the statement, however, discounted it as "not a medical source statement and not accompanied by a narrative report", and "not entirely consistent with the record and the findings of the Administrative Law Judge"; additionally the appeals council cited to the fact that the Plaintiff could perform personal care, prepare food, clean, do laundry, and use public transportation and "as indicated in the hearing decision, the claimant's activities are not as limited as one would expect". T. 5. That the opinion was expressed in terms of a check-box form were not grounds to dismiss it outright. *White*, 302 F. Supp. 2d at 174–76; *Lewis*, 2018 WL 1044562 at *3. In a function report in 2015, Plaintiff stated that her daughter helped her with meals and that "my daughter do the cooking". T. 174. At the hearing, she also reported that she needed her daughter's help cleaning the house that she needed frequent breaks, and on some days she couldn't clean. T. 42-44. With regards to a claimant's activities of daily living, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of social activity." *Kane v. Astrue*, 2012 WL 4510046 at *17 (W.D.N.Y. 2012), quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981). One can be disabled and get together with friends from time to time. *Kane*, 2012 WL 4510046 at *17. Even should a plaintiff testify to some activities indicative of some degree of functioning, the ALJ must take into account evidence in the record that shows the plaintiff "does not perform them on a regular and continuing basis." *Reinard v. Astrue*, 2010 WL 2758571, *8 (W.D.N.Y.2010); *Dailey v. Astrue*, 2010 WL 4703599, at *9 (W.D.N.Y. Oct. 26, 2010) *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). Doctor's notes reporting that a claimant went to Florida and Puerto Rico, without more information, is not enough to demonstrate that Plaintiff could perform work activities on a regular and continuing basis. *Marquez v. Comm'r of Soc. Sec.*, 2018 WL 6241308 at *4 (W.D.N.Y. 2018). For a claimant with an affective or personality disorder marked by anxiety, even if they are stable on medication, it may not support a conclusion that they may return to work, as "the work environment is completely

---

[1] Plaintiff filed her original claim on June 24, 2015.

different from home." *Mahon v. Colvin*, 2017 WL 1232471, at *15 (E.D.N.Y. 2017), citing *Morales v. Apfel*, 224 F.3d 310 (3d Cir. 2000).

(Dkt. No. 9-1 at 14–15.)  The Commissioner responds that Ms. Long's psychological assessment

received the consideration that was appropriate for a non-acceptable medical source and that it

lacked enough information to justify contradicting other clinical evidence in the record:

> [T]he only requirement for the Commissioner's assessment of an opinion from a non-acceptable medical source is that he address and discuss the opinion, which the Appeals Council did.  *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (noting that "the ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources'" as long as the Commissioner "address[es] and discuss[es] the opinion").  Accordingly, this opinion was not entitled to any special deference as Plaintiff's brief argues.  The Commissioner "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on the all evidence before him."  *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995); *see also Genier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008) (ALJ was free to discount assessments of physician's assistant and nurse practitioner in favor of the objective findings of other medical doctors.); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983).

> The Appeals Council's analysis did not end with merely noting that Ms. Long was not a medical source.  As the Appeals Council noted, Ms. Long merely completed a checkbox form, and provided little narrative report substantiating those limitations assessed, which minimizes its probative value.  Leaving aside the form of the opinion, its lack of narrative inherently degrades the value of the opinion, as it fails to support its conclusions with ties to clinical and medical findings.  For instance, Ms. Long stated that Plaintiff would be off task more than 30% of the time, but provided no reasoning to support this conclusion.  Tr. 530.  Indeed, it is impossible to know how she arrived at her conclusion.  *See, e.g. Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *3 (W.D.N.Y. Aug. 14, 2018) ("Courts in this Circuit have consistently held that 'lack of supporting detail and/or objective findings provides a ... reason for affording [an] opinion less weight.") (citing *Wright v. Colvin*, No. 5:12-cv-0440, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013; 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion."); *Halloran v. Barnhart*, 362 F.3d 28, 31 n. 2 (2d Cir. 2004) (describing a standardized form checklist as "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Llorens–Feliciano v. Astrue*, No. 6:11-cv-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *see also Camille*

*v. Colvin*, 625 F. App'x 25, *27 (2d Cir. June 15, 2016) (summary order) (ALJ entitled to discount opinion that lacked narrative explanation).

Moreover, the Appeals Council noted that this opinion was inconsistent with other evidence of record. Tr. 5. As the Appeals Council noted, and incorporating the findings of the ALJ, the record established that despite symptoms of anxiety, Plaintiff was able to complete a part-time work assignment from the Department of Social Services. Tr. 5, 467, 470. Plaintiff's treatment records also included numerous findings of appropriate mood and affect, and no anxiety or agitation. *See e.g.* Tr. 255, 262, 377, 378. She was able to perform all aspects of personal care, go out alone, shop, watch television, read, cook, do laundry, and use public transportation. Tr. 5, 43-46, 394, 470. As the Appeals Council noted, the ALJ had rightly found that such activities are inconsistent with the level of limitation alleged by Plaintiff. The Second Circuit has held that activities of daily living undermine a source's assertion of significant impairment. *See e.g. Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017); *Calabrese v. Astrue*, 358 F. App'x 274, 277-78 (2d Cir. 2009) (noting no problem with an ALJ considering activities of daily living as one of many reasons for finding a claimant not disabled).

(Dkt. No. 10-1 at 6–8.)

The Commissioner has the better argument. "If all of the evidence we receive, including all medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 416.920b(a). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). Here, clinical records indicate that plaintiff had depression, fair judgment, substance issues, and family stressors as far back as 2012 but that plaintiff reported "dealing with it." [*E.g.*, 296, 302.] The clinical records continued to acknowledge plaintiff's symptoms of depression in 2017. [412.] Ms. Long also observed symptoms of substance issues and major depressive disorder in 2017. [415, 422, 428.] Nothing in Ms. Long's clinical notes or in other clinical notes, however, contradicts the psychiatric evaluation that Adam Brownfeld, Ph.D., conducted on August 9, 2015. Dr. Brownfeld acknowledged plaintiff's reports about mood and current functioning. [395.] Dr. Brownfeld noted plaintiff's substance history. [395.] Dr. Brownfeld also assessed plaintiff as having intact concentration but low-average intellectual functioning. [396.]

*Cf. Peguero v. Comm'r*, No. 15CIV4714GBDHBP, 2016 WL 7494877, at *21 (S.D.N.Y. Dec. 29, 2016) (Commissioner affirmed where, *inter alia*, plaintiff was described "as continuing to be symptomatic with a depressed mood but with 'ok' attention, concentration, memory, information and ability to perform calculations and 'good' insight and 'fair' judgment), *report and recommendation adopted*, No. 15CIV4714GBDHBP, 2017 WL 375701 (S.D.N.Y. Jan. 26, 2017).  Dr. Brownfeld concluded in his medical source statement that plaintiff would have no limitations with simple directions and tasks but would have moderate limitations in performing complex tasks.  [397.]  No information in the clinical notes suggests otherwise.  The ALJ thus had a basis to decide that plaintiff's testimony and arguments about severity of symptoms could not "reasonably be accepted as consistent with the objective medical evidence."  20 C.F.R. § 416.929(c)(3); *see also Smith v. Comm'r*, No. 16-CV-953 HBS, 2018 WL 5076918, at *2 (W.D.N.Y. Oct. 17, 2018) (anxiety controlled with medication); *Britton v. Colvin*, No. 5:13-CV-00907, 2015 WL 1413382, at *15 (N.D.N.Y. Mar. 27, 2015) (affirming denial of benefits where the plaintiff maintained activities of daily living and some control over mental impairments); *Casler v. Astrue*, 783 F. Supp. 2d 414, 417 (W.D.N.Y. 2011) ("According to her treating physicians, her outlook has improved, her medications are as effective as can be expected, and plaintiff is succeeding in her efforts to manage her anxiety and avoid isolating herself, attending family events and yard sales, and planning a vacation.").  The ALJ was careful to focus on consistency with the overall record.  *See generally* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citation omitted).

Ms. Long's psychological assessment for the Monroe County Department of Human Services does not override the consistency between Dr. Brownfeld's evaluation and the clinical notes in the record. Ms. Long's checkboxes concerning plaintiff's "moderately limited" or "very limited" characteristics do not appear consistent with the clinical notes, to the extent that the checkboxes come with any context at all. [522.] *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (standardized forms can be "only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record."). Additionally, Ms. Long filled out the form for a different governmental agency that might have different standards for assessing functional limitations. *Cf. Chase v. Comm'r*, No. 17-CV-529 HBS, 2019 WL 2117650, at *3 (W.D.N.Y. May 15, 2019) (noting "the very different criteria that likely were of interest to the Allegany County Department of Social Services") (citation omitted). Substantial evidence thus supports how the ALJ chose to weigh the available clinical evidence, even apart from the Commissioner's correct position that Ms. Long is not an acceptable medical source.

In sum, plaintiff's arguments amount to a disagreement with the ALJ over how the factual information in the record led to the crafting of the RFC. Resolving factual disagreements is where the substantial-evidence rule has maximum effect. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial

evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record).  Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

III.     **CONCLUSION**

   The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 10) and denies plaintiff's cross-motion (Dkt. No. 9).

   The Clerk of the Court is directed to close the case.

   SO ORDERED.

        */s Hugh B. Scott*
        Hon. Hugh B. Scott
        United States Magistrate Judge

DATED: September 17, 2020